# EXHIBIT No. 2

*AFFIDAVIT OF LOUIS ORTIZ*

**IN THE UNITED STATES DISTRICT COURT**
**DISTRICT OF SOUTH CAROLINA**
**GREENVILLE DIVISION**
**Case Number: 6:25-cv-01068-TMC-KFM**

Nathan Chambers,

                                    Plaintiff,          **AFFIDAVIT OF LOUIS ORTIZ**

vs.

Greenville County, Greenville County Sheriff's
Office, John Hobart Lewis in his official
capacity of Sheriff of Greenville County, Louis
Ortiz, James Michael Glass, Jason Owens, Ryan
Freeman, Walter Bryson, and Hannah Stouffer,

                                    Defendants.

Pursuant to 28 U.S.C. § 1746, I testify under penalty of perjury as follows:

1. My name is Louis Ortiz and I am a Deputy with the Greenville County Sheriff's Office. I am at least eighteen (18) years of age, competent to testify, and testify from my own knowledge.

2. I make this declaration in regards to the above-captioned suit brought against myself, Greenville County, the Greenville County Sheriff's Office, and members of the same by the Plaintiff, Nathan Chambers.

3. On June 28, 2022, myself and other members of the Greenville County Sheriff's Office responded to a 911 call initiated by the Plaintiff requesting emergency aid for an overdose at Plaintiff's home in Greenville County.

4. When we arrived, we knocked on the door and Plaintiff let us into the house and led us through the living room, in which I observed a young child standing in a crib, to Plaintiff's rear bedroom.

1

5. In the rear bedroom we observed Plaintiff's girlfriends, Rachel Parsons, unconscious and lying on the floor, and immediately began rendering aid. Plaintiff informed us that he had administered two doses of naloxone, a drug commonly used to counteract the effects of a drug overdose, before our arrival.

6. Plaintiff informed us that Parsons had overdosed on fentanyl and heroin.

7. Parsons was breathing lightly when we arrived; we began using a pump to aid in her breathing and she quickly regained consciousness, at which point we placed her on an oxygen tank and began taking her vitals.

8. Plaintiff then informed us that he and Parsons were the only ones in the house with the minor child, which Plaintiff identified as his and Parson's child.

9. Plaintiff's room was strewn with drugs, needles, and other drug paraphernalia, including a container full of used needles, as well as numerous articles of law enforcement equipment, including numerous police shoulder patches, a plate-carrier law-enforcement-style vest with a printed Greenville County Sheriff's Office badge and a patch that read, "Deputy Sheriff," a taser, and a radio.

10. I identified marks on Plaintiff's arm consistent with drug use; when I asked him about them, he stated that they were from earlier.

11. I then left the room to check on the minor child and let EMS personnel into the home. The child was approximately 3 years old and appeared in a happy state. She was clothed only in a diaper, which was soaked all the way through, with urine soaking into the mattress.

12. EMS arrived and began rendering aid to Parsons, at which point I conducted a cursory scan of the house's common areas for officer safety and in order to make my report to

DSS; this included looking in the fridge to in order to determine whether there was food for the minor child.

13. In so doing, I observed that the house was not in a fit state to house a child; the floor was strewn with grime and hair. The furniture of the home was likewise dirty and a chair in the living room had a hole in one of the cushion with exposed springs. The walls of the home were likewise covered in grime and cobwebs. Plaintiff's father, who arrived later, informed me that the child had to wear shoes in order to walk within the house.

14. Based on the admitted and apparent drug use, the state of the child, and the state of the home, we called the South Carolina Department of Social Services (hereinafter, "DSS") to conduct an investigation and determine whether the child needed to be removed from the home.

15. Upon returning to the bedroom, I noted that Plaintiff was acting agitated and erratic. Based upon his behavior, he was placed in handcuffs, removed from the room and detained in order to preserve the scene, to effectively render aid to Parsons without interruption, and conduct the requisite investigation needed in order to determine the child's safety. Plaintiff was mirandized during this process.

16. While Plaintiff was not arrested, at this point in the interaction we had sufficient probable cause, much less reasonable suspicion, to believe that Plaintiff had committed drug offenses as well as the crime of unlawful conduct toward a child.

17. We likewise investigated Plaintiff's possession of law enforcement paraphernalia, based on recent thefts of similar equipment from the Greenville County Sheriff's Office.

18. Plaintiff was not arrested nor charged with any crime in connection with this incident.

19. As a Sheriff with the Greenville County Sheriff's Office, I have an obligation to report cases of suspected child abuse and/or neglect to the Department of Social Services; this obligation is mandatory and not discretionary.

20. I reported to DSS that the child's mother had overdosed and that the Plaintiff showed signs of admitted drug use. I likewise reported the home's condition and the presence of some food in the refrigerator.

21. DSS personnel arrived and conducted an investigation, as a result of which the minor child was removed from the home and remanded to DSS's emergency custody; DSS filed a complaint for the removal of the child.

22. Greenville County Sheriff's Deputies are trained to provide medical aid in cases of overdoses.

23. The records and videos included with this affidavit are true and accurate to the best of my recollection and are kept and preserved by the Greenville County Sheriff's Office in the ordinary course of business.

This affidavit is made upon my personal knowledge and sets forth facts that would be admissible at trial. I declare (or certify, verify, or state) under penalty of perjury that the foregoing is true and correct.

_____ #2026
Louis Ortiz

Sworn to before me in the County of Greenville State of South Carolina this 23rd day of January, 2026.

_____

EMILEE EDENS
Notary Public-State of South Carolina
My Commission Expires
December 19, 2033

4

Notary Public for South Carolina
Print Name Emilee Edens

My commission expires 12|19|2033